IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOP METAL BUYERS, et al.,     ) | |
|     ) | |
|    Plaintiffs,     ) | |
|     ) | Cause No. 3:24-cv-01073 |
| vs.     ) | |
|     ) | |
| ANDREW LOPINOT, et al.,     ) | |
|     ) | |
|    Defendants     ) | |
| vs.     ) | |
|     ) | |
| RAVEN SECURITIES, INC., et al.,     ) | |
|     ) | |
|    Third-Pary Defendants.     ) | |

## THIRD-PARTY DEFENDANTS RAVEN SECURITIES, INC. AND VI, INC.'S RULE 12(b)(6) MOTION TO DISMISS THIRD-PARTY COMPLAINT

COMES NOW Third-Party Defendants Raven Securities, Inc. ("Raven") and VI, Inc. ("VI"), by and through their attorneys, and pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss the Third-Party Complaint filed by Defendants/Third-Party Plaintiffs. In support thereof, Raven and VI state as follows:

This Third-Party Complaint is an effort by the County Defendants (Defendants/Third-Party Plaintiffs St. Clair County, Madison County, and/or the defendant county officials, collectively referred to as the "Counties" or "County Defendants",) to shift potential constitutional liability from governmental entities charged with administering Illinois' property tax system to private tax buyers who merely participated in tax sales authorized by Illinois law.

Plaintiffs' underlying claims are directed at governmental actors. Plaintiffs allege that county officials violated the Takings Clause, Excessive Fines Clause, and Illinois Constitution by administering the Illinois Property Tax Code in a manner that allegedly deprived delinquent taxpayers of surplus equity following tax sales. The Counties now attempt to pass that liability to private tax buyers who purchased tax delinquencies, received certificates of purchase, and later exercised statutory rights afforded by Illinois law.

The Third-Party Complaint fails for three independent reasons. First, it contains no plausible allegations that Raven or VI acted under color of state law. Second, neither §1983, §1988, nor Illinois contribution law permits the Counties to shift constitutional liability to private tax buyers. Third, Count I seeks an advisory opinion concerning hypothetical future liability rather than a live controversy between these parties.

Importantly, these theories were recently rejected by Judge Sara Ellis in *Sharritt v. Henry*, No. 23-cv-15838 (N.D. Ill. Mar. 20, 2026). Although not binding, *Sharritt* is especially persuasive because it addressed the precise litigation strategy employed here: Illinois counties attempting to shift potential *Tyler*-based constitutional liability arising from Illinois tax sales to private tax buyers. The court analyzed the same statutory framework, materially similar allegations, and substantially identical theories of state action, contribution, indemnity, and declaratory relief before dismissing the counties' claims. Because *Sharritt* arises from the same legal and factual context presented in this

case, its reasoning provides a persuasive guide for disposition of the Third-Party Complaint.

For all of these reasons, the Third-Party Complaint should be dismissed with prejudice.

## RELEVANT FACTS

The Third-Party Complaint alleges, very simply, that Raven and VI participated in annual tax sales authorized by the Illinois Property Tax Code, purchased tax delinquencies, received certificates of purchase, and later petitioned Illinois circuit courts for tax deeds. That is essentially it.

Specifically, Third-Party Plaintiffs allege:

- Tax buyers purchased tax delinquencies at annual tax sales. See Doc. 121 at ¶ 20.

- Tax buyers received certificates of purchase. See Doc. 121 at ¶ 21.

- Tax buyers exercised statutory rights to petition circuit courts for tax deeds. See Doc. 121 at ¶ 21 and ¶ 38.

- Circuit courts issued orders directing county clerks to issue tax deeds. See Doc. 121 at ¶ 24.

- County officials lacked discretion to disregard such orders. See Doc. 121 at ¶ 42.

- The Counties were not parties to the tax deed proceedings. See Doc. 121 at ¶ 40.

The Counties, despite no allegations in support, nevertheless assert that tax buyers "effectively acted under the color of state law" because they invoked statutory procedures that ultimately resulted in issuance of tax deeds.  See Doc. 121 at ¶ 22.

## ARGUMENT

I.     **RAVEN AND VI ARE NOT STATE ACTORS AND CANNOT BE LIABLE ON CONSTITUTIONAL CLAIMS.**

The Counties' claims depend entirely upon the proposition that Raven and VI acted under color of state law. Without state action there can be no liability under §1983. The Seventh Circuit recently reaffirmed that: "Without state action there can be no § 1983 liability." *Scott v. Univ. of Chicago Med. Ctr.*, 107 F.4th 752, 762 (7th Cir. 2024).

The Supreme Court and Seventh Circuit generally recognize only three circumstances in which private entities may be treated as state actors. *Id*. at 757. The first is a joint action or conspiracy with the government theory where the private party is alleged to have conspired with the government to infringe on plaintiffs' constitutional rights. *Id.* The second occurs when a private party performs a function that "has traditionally been the exclusive prerogative of the State." *Id*.  The last exception is "courts will also find state action when a private party and the State are interdependent to the point of largely overlapping identity." *Id.*

None applies here.

**A. The Third-Party Complaint Fails To Allege Joint Action Or Conspiracy.**

To proceed under a joint-action theory, a plaintiff must allege facts showing more than parallel conduct. The Seventh Circuit recently explained, "there must have been a real agreement—explicit or implicit—between the parties. Merely working in parallel toward a common goal is not the same as conspiring together." *Scott*, 107 F.4th at 758. The Counties must allege that the private party and the government "had a meeting of the minds and thus reached an understanding" to deny plaintiffs their constitutional rights. *Id.*

Here, there are zero factual allegations establishing a meeting of the minds, coordination, an agreement, a conspiracy, pre-sale planning, communications between Raven or VI and county officials, or any shared intent to deprive property owners of constitutional rights.

The only allegation even made against Raven and VI is that they participated in annual tax sales and later petitioned courts for tax deeds. That is not enough.  In fact, the United States Supreme Court has repeatedly held that the mere utilization of state procedures by private parties does not satisfy the state-action requirement. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 n.21 (1982).  Indeed, the Third-Party Complaint alleges no direct communications, coordination, agreement, or other interaction between Raven or VI and any County official concerning the alleged constitutional deprivation.

Likewise, the Seventh Circuit has held that a private party acting alongside government officials remains private when acting to further its own independent interests. *United States v. Bebris*, 4 F.4th 551, 560-61 (7th Cir. 2021). The allegations establish only that Raven and VI pursued their own economic interests through procedures made available by Illinois statute. That does not create state action.

**B. Raven And VI Did Not Perform A Traditional Exclusive State Function.**

The Third-Party Complaint also fails under the public-function doctrine. A private party becomes a state actor only when exercising powers, "traditionally exclusively reserved to the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). The Counties allege that tax buyers exercised governmental power by seeking tax deeds.

The Seventh Circuit has already rejected that kind of argument. In *Hinman v. Lincoln Towing Service, Inc.*, the Court held, "The availability of and right to exercise state-created liens has never been an exclusive prerogative of the State." 771 F.2d 189, 193 (7th Cir. 1985). That principle is fatal to the Counties' theory.

According to the Third-Party Complaint:

- The Counties conducted the tax sales. See Doc. 121 at ¶ 3, 18 and 20.

- The Counties collected the delinquent taxes. See Doc. 121 at ¶ 3, 17 and 18.

- Circuit courts determined whether statutory requirements had been met. See Doc. 121 at ¶ 39 and 41.

- Circuit courts issued the orders. See Doc. 121 at ¶ 24 and 39.

- County clerks issued the deeds. See Doc. 121 at ¶ 6, 24, 39 and 42.

Raven and VI merely exercised statutory rights available to private certificate holders. Exercising a state-created lien remedy is not an exclusively governmental function.

**C. Raven and VI Are Not Entwined With the Counties.**

The Third-Party Complaint also fails to establish state action under an entwinement or interdependence theory. State action based upon entwinement is reserved for the rare circumstance where a private entity and the government become so intertwined that the private entity effectively functions as the State itself. The Seventh Circuit recently explained that this doctrine turns on whether the government and private entity are "actually entwined, not whether they appear to be." *Scott v. Univ. of Chicago Med. Ctr.*, 107 F.4th 752, 761 (7th Cir. 2024). Mere cooperation is insufficient. *Id.* Rather, state action exists only where public and private entities are interdependent "to the point of largely overlapping identity." *Id.*; *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 303 (2001).

The allegations at issue here, bear no resemblance to the circumstances present in *Brentwood*, where the Supreme Court found state action based on extensive governmental control and institutional integration. 531 U.S. at 298-302. Here, the Complaint alleges only that Raven and VI participated in tax sales and later pursued tax

deeds through procedures authorized by Illinois law. Doc. 121 ¶¶ 39-42. Those allegations do not establish entwinement, interdependence, or an overlapping identity with any governmental entity.

According to the Third-Party Complaint, the Counties merely conducted tax sales required by state law. Raven and VI allegedly participated in those sales and later utilized judicial procedures provided by statute. Such conduct falls far short of the pervasive public-private integration required by *Brentwood* and *Scott*.

With no factual allegations suggesting actual entwinement, interdependence, overlapping identity, or public control, the Counties have failed to plead state action under the entwinement doctrine. Accordingly, the theories that form the foundation of Counts I, II, and III fail as a matter of law.

**D. The Recent New Jersey and Nebraska Tax Buyer Cases Do Not Apply to Illinois and Do Not Establish State Action Here.**

The Counties may rely on recent decisions from New Jersey and Nebraska that treated certain tax buyers as state actors. See *257-261 20th Ave. Realty, LLC v. Roberto*, 259 N.J. 417 (2025); *Continental Resources v. Fair*, 317 Neb. 391 (2024). Those decisions do not control this Court and do not alter the outcome required by Seventh Circuit precedent.

The Seventh Circuit recently reaffirmed that private parties become state actors only under limited circumstances, including joint action with the government, exercise of a function traditionally and exclusively reserved to the State, or entwinement so extensive that public and private entities possess an overlapping identity. *Scott v. Univ.*

*of Chicago Med. Ctr.*, 107 F.4th 752, 757-62 (7th Cir. 2024). As discussed above, the Third-Party Complaint plausibly alleges none of those circumstances.

Moreover, the Counties' own allegations establish that Illinois counties conduct the tax sales, collect the delinquent taxes, and receive payment when certificates of purchase are sold. Doc. 121 ¶¶ 3, 17-20. The Complaint further alleges that tax buyers may later elect whether to pursue a tax deed and that no provision of the Illinois Property Tax Code requires them to do so. Id. ¶¶ 3-7. Thus, even under the Counties' allegations, Raven and VI merely exercised statutory rights associated with certificates of purchase acquired through the tax-sale process.

That distinction is significant because the Seventh Circuit has expressly held that "[t]he availability of and right to exercise state-created liens has never been an exclusive prerogative of the State." *Hinman v. Lincoln Towing Serv., Inc.*, 771 F.2d 189, 193 (7th Cir. 1985). Whatever persuasive value *Roberto* and *Fair* may have in their respective jurisdictions, neither decision can overcome controlling Seventh Circuit authority holding that the exercise of state-created lien rights does not constitute an exclusively governmental function.

Accordingly, the recent New Jersey and Nebraska decisions do not support the Counties' attempt to characterize Raven and VI as state actors, and they provide no basis to depart from the governing standards articulated in *Scott* and *Hinman*.

## II.     EVEN IF RAVEN AND VI WERE STATE ACTORS, THE COUNTIES' CLAIMS FAIL AS A MATTER OF LAW.

Counts II and III seek to transfer to Raven and VI any liability the Counties may incur on Plaintiffs' constitutional claims. Whether characterized as contribution under 42 U.S.C. § 1988 or contribution under the Illinois Joint Tortfeasor Contribution Act, the Counties' theory fails because neither federal nor Illinois law permits governmental defendants to shift § 1983 liability in that manner.

**A. Count II Fails Because Section 1983 Does Not Permit Contribution Claims.**

Count II seeks contribution under 42 U.S.C. § 1988 for any damages that may ultimately be awarded against the Counties in the underlying action. The Counties allege that Raven and VI should contribute their "pro rata share" of any damages assessed against the Counties and further allege that such pro rata share equals 100 percent of the Counties' liability. Doc. 121, ¶¶ 72-75. The claim fails because neither § 1983 nor federal common law provides a right of contribution.

The Counties are being sued on federal constitutional claims brought pursuant to § 1983.  Accordingly, the Counties' contribution claim necessarily seeks contribution for potential liability arising under § 1983. Federal courts have overwhelmingly held that no contribution remedy exists in § 1983 litigation.

In *Perks v. County of Shelby*, the Central District of Illinois dismissed a contribution claim arising from alleged constitutional violations, holding that "no such right exists." No. 09-3154, 2009 WL 2985859, at *3 (C.D. Ill. Sept. 15, 2009). Likewise, in

*Burris v. Cullinan*, the court held that § 1983 "does not authorize a right to contribution." No. 09-3116, 2009 WL 3575420, at *8 (C.D. Ill. Oct. 23, 2009).

Those decisions are consistent with Supreme Court authority refusing to imply contribution rights where Congress did not create them. See *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 90-97 (1981); *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638-47 (1981).

Judge Ellis recently applied those same principles in *Sharritt*. *Sharritt v. Henry*, No. 23-cv-15838, Doc. 203, at 14-16 (N.D. Ill. Mar. 20, 2026) (holding that Illinois counties could not assert contribution claims against tax buyers because no right of contribution exists under § 1983). There, Illinois counties asserted contribution claims against tax buyers arising from *Tyler v. Hennepin County* and Illinois tax sales. The court held, "The majority of courts have agreed with the Tax Buyers that no right to contribution exists under § 1983." *Sharritt*, Doc. 203 at 14. The court ultimately dismissed the counties' contribution theory because federal law simply does not provide such a remedy. *Id.* at 14-16.

The Counties assert the same theory here. Count II therefore fails as a matter of law.

**B. Section 1988 Does Not Create a Right of Contribution.**

Recognizing the absence of any contribution remedy within § 1983 itself, the Counties attempt to invoke § 1988. That effort fares no better.

Section 1988 permits courts, in limited circumstances, to borrow state law if federal law is deficient and the borrowed rule is not inconsistent with federal law. See *Robertson v. Wegmann*, 436 U.S. 584, 588-90 (1978); *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985).  But Section 1988 is not an independent source of substantive rights. It does not authorize courts to create contribution remedies that Congress declined to enact.

As Judge Ellis explained in *Sharritt*, courts considering § 1988 contribution theories must determine whether the proposed state-law contribution rule is consistent with the purposes of § 1983. *Sharritt*, Doc. 203 at 15. The policies underlying § 1983 include compensating persons injured by deprivation of federal rights and deterring abuses of governmental authority. *Robertson*, 436 U.S. at 590-91; *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Contribution undermines those purposes because it reduces the financial consequences imposed upon constitutional wrongdoers.

Judge Ellis expressly held, "A state law contribution claim would undermine the deterrent purpose of § 1983 because it would reduce the potential cost of a constitutional violation." *Sharritt*, Doc. 203 at 16.

That reasoning applies with full force here. The Counties do not seek partial apportionment. They seek an order requiring private tax buyers to assume 100 percent of any constitutional liability assessed against the Counties. Doc. 121, ¶¶ 72-75. Allowing governmental defendants to transfer all constitutional liability to private

parties would eviscerate the deterrent function of § 1983. Section 1988 does not permit that result.

Count II should therefore be dismissed with prejudice.

**C. Count III Fails Because the Illinois Joint Tortfeasor Contribution Act Cannot Be Used to Shift Constitutional Liability.**

Count III invokes the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01 et seq. Doc. 121, ¶¶ 76-80. This count merely repackages the same contribution theory rejected above.

The Illinois Contribution Act allows contribution among parties who are subject to common liability in tort. 740 ILCS 100/2(a). It does not create federal constitutional liability. Nor does it authorize governmental defendants to transfer § 1983 liability to private entities.

Again, Judge Ellis addressed the same argument in *Sharritt*. The counties there argued that Illinois contribution principles could be imported through § 1988 and applied against tax buyers. The court rejected the argument because Illinois contribution law conflicts with the deterrent purposes of § 1983. *Sharritt*, Doc. 203 at 14-16. The same reasoning controls here.

Moreover, Count III reveals that the Counties are not truly seeking contribution at all. The Complaint expressly alleges that Raven and VI should be responsible for: "100% of any and all damages and costs" assessed against the Counties. Doc. 121, ¶¶ 75, 80. But contribution does not permit complete reimbursement.

The Illinois Supreme Court has explained, "The concept of contribution contemplates that each party whose fault contributed to an injury should pay its pro rata share of the common liability." *Virginia Surety Co. v. Northern Insurance Co. of N.Y.*, 224 Ill. 2d 550, 557 (2007).

A demand for 100 percent reimbursement is indemnity, not contribution. The Counties did not plead indemnity. And even if they had, Judge Ellis recently rejected Illinois counties' implied-indemnity claims against tax buyers because there was no qualifying pre-tort relationship and no basis for derivative liability. *Sharritt*, Doc. 203 at 16-19. The Counties cannot obtain through contribution what they could not obtain through indemnity.

Count III should be dismissed with prejudice.

### III.   COUNT I SHOULD BE DISMISSED BECAUSE IT SEEKS AN ADVISORY OPINION AND DOES NOT PRESENT A LIVE CONTROVERSY BETWEEN THE COUNTIES AND RAVEN OR VI.

Count I does not present a ripe controversy between the Counties and Raven or VI. The Counties seek a declaration either that the Indemnity Fund immunizes them from liability under *Tyler* or, alternatively, that tax buyers are state actors who must reimburse any surplus value transferred through tax deeds. Doc. 121, ¶ 63. Those requests concern the Counties' potential defenses and hypothetical future liability, not any present dispute between the Counties and Raven or VI.

The Declaratory Judgment Act authorizes relief only in a "case of actual controversy." 28 U.S.C. § 2201(a). It does not permit advisory opinions or declarations based on contingent future events. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

Here, the Counties' requested declaration depends on several contingencies: Plaintiffs must prevail on their *Tyler* claims; the Court must reject the Indemnity Fund as a constitutionally sufficient remedy; and the Counties must be found liable. Only then would any question arise concerning Raven, VI, or other tax buyers. That is not a present controversy—it is a request for guidance about what might happen if multiple future events occur.

The allegations of the Third-Party Complaint underscore the point. They allege that the Counties retain only delinquent taxes, fees, and penalties; that surplus value is not transferred to the Counties; that tax buyers petition circuit courts for tax deeds; that the Counties are not parties to those proceedings; and that county officials lack discretion to disregard court orders directing issuance of tax deeds. Doc. 121, ¶¶ 35-42. Those allegations may relate to the Counties' defenses against Plaintiffs, but they do not create an independent claim against Raven or VI.

Judge Ellis recently rejected a similar effort in *Sharritt*, dismissing tax buyers from a declaratory judgment claim where the requested declaration concerned the

constitutionality of the Property Tax Code rather than any specific legal obligation owed by the tax buyers. *Sharritt*, Doc. 203 at 13 n.9. The same defect exists here.

Nor can the Counties use declaratory relief to salvage their defective state-action and contribution theories. If Raven and VI are not state actors and no contribution claim exists, the Counties cannot obtain the same relief simply by labeling it a request for declaratory judgment.

Count I should therefore be dismissed because it seeks an advisory opinion concerning the Counties' potential defenses and hypothetical future liability rather than a concrete, present controversy between the Counties and Raven or VI.

## CONCLUSION

For the foregoing reasons, Third-Party Defendants Raven Securities, Inc. and VI, Inc. respectfully request that this Court dismiss Counts I, II, and III of the Third-Party Complaint against them with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and grant such further relief as the Court deems just and proper.

Respectfully Submitted,

/s/Jarrod P. Beasley
Jarrod P. Beasley #6274536
Attorney for Third-Party Defendants
Kuehn, Beasley & Young, P.C.
23 S. First St.
Belleville, IL 62220
Telephone: 618.277.7260
Fax: 618.277.7718
jarrodbeasley@kuehnlawfirm.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 22, 2026 I electronically filed the **MOTION TO DISMISS THIRD PARTY COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/Erin Kelley
Erin Kelley
Kuehn, Beasley & Young, P.C.