IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TOP METAL BUYERS, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ANDREW LOPINOT, et al.,<br><br>Defendants,<br><br>vs.<br><br>RAVEN SECURITIES, INC., et al.,<br><br>Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cause No. 3:24-cv-01073-NJR |

**THIRD-PARTY DEFENDANT SABRE INVESTMENTS, LLC'S RULE 12(b)(1) and 12(b)(6) MOTION TO DISMISS THIRD-PARTY COMPLAINT AND MEMORANDUM IN SUPPORT**

COMES NOW Third-Party Defendant Sabre Investments, LLC ("Sabre"), by and through its attorneys, and pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), moves to dismiss the Third-Party Complaint filed by Defendants/Third-Party Plaintiffs. In support thereof, Sabre states:

## INTRODUCTION

This Third-Party Complaint is an effort by the County Defendants (Defendants/Third-Party Plaintiffs St. Clair County, Madison County, and/or the defendant county officials, collectively referred to as the "Counties") to shift potential constitutional liability from governmental entities charged with administering Illinois' property tax system to private tax buyers who merely participated in tax sales authorized by Illinois law.

Plaintiffs' underlying claims are directed at governmental actors. Plaintiffs allege county officials violated the Takings Clause, Excessive Fines Clause, and Illinois Constitution by



43772494.v1

administering the Illinois Property Tax Code in a manner that allegedly deprived delinquent taxpayers of surplus equity following tax sales. The Counties now attempt to pass that liability to private tax buyers who purchased tax delinquencies, received certificates of purchase, and later exercised statutory rights afforded by Illinois law.

The Third-Party Complaint should be dismissed under 12(b)(1) because the Counties lack standing. It also fails under 12(b)(6) for three independent reasons: (1) the Third-Party Complaint contains no plausible allegations that Sabre acted under color of state law, (2) neither §1983, §1988, nor Illinois contribution law permits the Counties to shift constitutional liability to private tax buyers, like Sabre, and (3) Count I seeks an advisory opinion concerning hypothetical future liability rather than a live controversy between these parties.

Importantly, these third-party plaintiffs' theories were recently rejected by Judge Sara Ellis in *Sharritt v. Henry,* No. 23-cv-15838, Doc. 203 (N.D. Ill. Mar. 20, 2026). Although not binding, *Sharritt* is especially persuasive because it addressed the precise litigation strategy employed here: Illinois counties attempting to shift potential *Tyler*-based constitutional liability arising from Illinois tax sales to private tax buyers. The court analyzed the same statutory framework, materially similar allegations, and substantially identical theories of state action, contribution, indemnity, and declaratory relief before dismissing the counties' claims. Because *Sharritt* arises from the same legal and factual context presented in this case, its reasoning provides a persuasive guide for disposition of the Third-Party Complaint.

For all of these reasons, the Third-Party Complaint should be dismissed with prejudice.

## RELEVANT FACTS

The Third-Party Complaint alleges, very simply, that Sabre participated in annual tax sales authorized by the Illinois Property Tax Code, purchased tax delinquencies, received certificates of

purchase, and later petitioned Illinois circuit courts for tax deeds. That is essentially it. Specifically, Third-Party Plaintiffs allege:

- Tax buyers purchased tax delinquencies at annual tax sales. (Doc. 121, ¶ 20).
- Tax buyers received certificates of purchase. (Id. ¶ 21).
- Tax buyers exercised statutory rights to petition circuit courts for tax deeds. (Id. ¶¶ 21, 38).
- Circuit courts issued orders directing county clerks to issue tax deeds. (Id. ¶ 24).
- County officials lacked discretion to disregard such orders. (Id. ¶ 42).
- The Counties were not parties to the tax deed proceedings. (Id. ¶ 40).

The Counties, despite no allegations in support, nevertheless assert that tax buyers "effectively acted under the color of state law" because they invoked statutory procedures that ultimately resulted in issuance of tax deeds. (Id. ¶ 22).

## LEGAL STANDARD

### I. Dismissal under Federal Rule of Civil Procedure 12(b)(1).

Under Rule 12(b)(1), a claim should be dismissed if the federal court lacks jurisdiction over the subject matter of the claim. *See Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) ("[j]urisdiction is the power to declare law, and without it the federal courts cannot proceed."). A court ruling on a Rule 12(b)(1) motion to dismiss must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Id.*; see also *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993)). However, where a party raises a factual question concerning jurisdiction, the district court is not bound to accept as true the allegations of the complaint which tend to establish jurisdiction. *Grafon Corp. v. Hauserman*, 602 F.2d 781, 783 (7th Cir. 1979). The burden of proof to demonstrate subject matter jurisdiction is on the party



43772494.v1

asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

II. **Dismissal under Federal Rule of Civil Procedure 12(b)(6).**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago,* 810 F.3d 476, 480-81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis,* 742 F.3d 720, 728-29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Legal conclusions couched as factual allegations, naked assertions, or threadbare recitals of elements are insufficient. *Id*. at 678-80.

## ARGUMENT

## I. THE COUNTIES LACK STANDING

The Counties bring this third-party action under the Illinois Constitution, the Fifth Amendment to the U.S. Constitution, 42 U.S.C. § 1983 and § 1988, the federal Declaratory Judgment Act, 28 U.S.C. 2201, et seq., and the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01 et seq.

The Counties do not have standing to assert a takings claim under the Fifth Amendment. The Counties are municipalities and not private property owners. The statutory scheme at issue allegedly deprives the Plaintiffs in the underlying lawsuit (Doc. 143) of their property without just compensation.

The Counties do not own any properties at issue, nor has Sabre or the other tax buyers deprived them of any private property.

Additionally, the Counties lack standing to bring these third-party claims under § 1983. The Counties are municipalities and do not qualify as "other persons" entitled to maintain a suit under § 1983. *See City of E. St. Louis v. Cir. Ct. for the Twentieth Judicial Dist.,* 986 F.2d 1142, 1144 (7th Cir. 1993) ("Municipalities cannot challenge state action on federal constitutional grounds because they are not `persons' within the meaning of the Due Process Clause. Because East St. Louis is not a 'person,' it cannot invoke the protection of the Fifth or Fourteenth Amendments, and therefore cannot bring a section 1983 claim." (citation omitted)); *Barbara Z. v. Obradovich,* 937 F. Supp. 710, 722 (N.D. Ill. 1996) (concluding that municipalities and other state political subdivisions cannot bring suit under § 1983, where doing so would "ignore[ ] the underlying purpose of the statute: the vindication of individual interests against state action").

The Third-Party Complaint should be dismissed for lack of standing under Rule 12(b)(1).

## II. SABRE IS NOT A STATE ACTOR AND CANNOT BE LIABLE ON CONSTITUTIONAL CLAIMS.

The Counties' claims depend entirely upon the proposition that Sabre acted under color of state law. Without state action, there can be no liability under §1983. The Seventh Circuit recently reaffirmed: "Without state action there can be no § 1983 liability." *Scott v. Univ. of Chicago Med. Ctr.,* 107 F.4th 752, 762 (7th Cir. 2024).

The Supreme Court and Seventh Circuit generally recognize only three circumstances in which private entities may be treated as state actors. *Id.* at 757. The first is a joint action or conspiracy with the government theory where the private party is alleged to have conspired with the government to infringe on plaintiffs' constitutional rights. *Id.* The second occurs when a private party performs a function that "has traditionally been the exclusive prerogative of the State." *Id.*

The last exception is "when a private party and the State are interdependent to the point of largely overlapping identity." *Id.* None of the exceptions applies here as discussed below.

**A. The Third-Party Complaint Fails to Allege Joint Action or Conspiracy.**

To proceed under a joint-action theory, a plaintiff must allege facts showing more than parallel conduct. The Seventh Circuit recently explained, "there must have been a real agreement—explicit or implicit—between the parties. Merely working in parallel toward a common goal is not the same as conspiring together." *Scott,* 107 F.4th at 758. The Counties must allege that the private party and the government "had a meeting of the minds and thus reached an understanding" to deny plaintiffs their constitutional rights. *Id.*

Here, there are zero factual allegations establishing a meeting of the minds, coordination, an agreement, a conspiracy, pre-sale planning, communications between Sabre and county officials, or any shared intent to deprive property owners of constitutional rights. The only allegation even made against Sabre is that it participated in annual tax sales and later petitioned courts for tax deeds. That is not enough. In fact, the U.S. Supreme Court has repeatedly held the mere utilization of state procedures by private parties does not satisfy the state-action requirement. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 939 n.21 (1982). Indeed, the Third-Party Complaint alleges no direct communications, coordination, agreement, or other interaction between Sabre and any County official concerning the alleged constitutional deprivation.

Likewise, the Seventh Circuit has held that a private party acting alongside government officials remains private when acting to further its own independent interests. *United States v. Bebris,* 4 F.4th 551, 560-61 (7th Cir. 2021). The allegations establish only that Sabre pursued its own economic interests through procedures made available by Illinois statute. That does not create state action.

**B. Sabre Did Not Perform a Traditional Exclusive State Function.**

The Third-Party Complaint also fails under the public-function doctrine. A private party becomes a state actor only when exercising powers, "traditionally exclusively reserved to the State." *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352 (1974). The Counties allege that tax buyers exercised governmental power by seeking tax deeds. But, the Seventh Circuit has already rejected that kind of argument. In *Hinman v. Lincoln Towing Service, Inc.,* the Court held, "The availability of and right to exercise state-created liens has never been an exclusive prerogative of the State." 771 F.2d 189, 193 (7th Cir. 1985). That principle is fatal to the Counties' theory. According to the Third-Party Complaint:

- The Counties conducted the tax sales. (Doc. 121, ¶¶ 3, 18, 20).
- The Counties collected the delinquent taxes. (Id. ¶ 3, 17, 18).
- Circuit courts determined whether statutory requirements had been met. (Id. ¶¶ 39, 41).
- Circuit courts issued the orders. (Id. ¶¶ 24, 39).
- County clerks issued the deeds. (Id. ¶¶ 6, 24, 39, 42).

Sabre merely exercised statutory rights available to private certificate holders. Exercising a state-created lien remedy is not an exclusively governmental function.[1]

---

[11] See e.g., *Tunstall v. Off. of Jud. Support of Ct. of Common Pleas of Delaware County,* 820 F.2d 631 (3rd Cir. 1987) (a buyer at a municipal tax sale "was not acting under color of state law in purchasing the property," emphasizing that the county, not the buyer, instigated the sale, and the buyer's involvement began only on the day of the sale); *Wittstock v. Mark A. Van Sile, Inc.* 330 F. 3d 899 (6th Cir. 2003) (rejecting the argument that a tax-sale purchaser "carries out aspects of the state's tax collection function," holding that enforcing a tax lien is not shown to be a function "traditionally reserved to the state."); *Hirsch v. Copenhaver,* 839 F. Supp. 1524 (D. Wyo. 1983) (dismissed § 1983 claims against tax-sale purchasers who "resorted to available state court judicial procedures to obtain possession," because "merely instituting a routine civil suit does not transform a litigant's actions into those taken under color of state law.")

**C. Sabre is Not Entwined with the Counties.**

The Third-Party Complaint also fails to establish state action under an entwinement or interdependence theory. State action based upon entwinement is reserved for the rare circumstance where a private entity and the government become so intertwined that the private entity effectively functions as the State itself. The Seventh Circuit recently explained that this doctrine turns on whether the government and private entity are "actually entwined, not whether they appear to be." *Scott v. Univ. of Chicago Med. Ctr.,* 107 F.4th 752, 761 (7th Cir. 2024). Mere cooperation is insufficient. *Id.* Rather, state action exists only where public and private entities are interdependent "to the point of largely overlapping identity." *Id.; Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 303 (2001).

The allegations at issue here, bear no resemblance to the circumstances present in *Brentwood,* where the Supreme Court found state action based on extensive governmental control and institutional integration. 531 U.S. at 298-302. Here, the Third-Party Complaint alleges only that Sabre participated in tax sales and later pursued tax deeds through procedures authorized by Illinois law. (Doc. 121 ¶¶ 39-42). Those allegations do not establish entwinement, interdependence, or an overlapping identity with any governmental entity.

According to the Third-Party Complaint, the Counties merely conducted tax sales required by state law. Sabre allegedly participated in those sales and later utilized judicial procedures provided by statute. Such conduct falls far short of the pervasive public-private integration required by *Brentwood* and *Scott.*

With no factual allegations suggesting actual entwinement, interdependence, overlapping identity, or public control, the Counties have failed to plead state action under the entwinement

doctrine. Accordingly, the theories that form the foundation of Counts I, II, and III fail as a matter of law.

**D. The Recent New Jersey and Nebraska Tax Buyer Cases Do Not Apply to Illinois and Do Not Establish State Action Here.**

The Counties may rely on recent decisions from New Jersey and Nebraska that treated certain tax buyers as state actors. See *257-261 20th Ave. Realty, LLC v. Roberto,* 259 N.J. 417 (2025); *Continental Resources v. Fair,* 317 Neb. 391 (2024). Those decisions do not control this Court and do not alter the outcome required by Seventh Circuit precedent.

The Seventh Circuit recently reaffirmed that private parties become state actors only under limited circumstances, including joint action with the government, exercise of a function traditionally and exclusively reserved to the State, or entwinement so extensive that public and private entities possess an overlapping identity. *Scott,* 107 F.4th at 757-62 (7th Cir. 2024). As discussed above, the Third-Party Complaint plausibly alleges none of those circumstances.

Moreover, the Counties' own allegations establish that Illinois counties conduct the tax sales, collect the delinquent taxes, and receive payment when certificates of purchase are sold. (Doc. 121 ¶¶ 3, 17-20). The Third-Party Complaint further alleges that tax buyers may later elect whether to pursue a tax deed and that no provision of the Illinois Property Tax Code requires them to do so. (Id. ¶¶ 3-7). Thus, even under the Counties' allegations, Sabre merely exercised statutory rights associated with certificates of purchase acquired through the tax-sale process.

That distinction is significant because the Seventh Circuit has expressly held that "[t]he availability of and right to exercise state-created liens has never been an exclusive prerogative of the State." *Hinman v. Lincoln Towing Serv., Inc.,* 771 F.2d 189, 193 (7th Cir. 1985). Whatever persuasive value *Roberto* and *Fair* may have in their respective jurisdictions, neither decision can

overcome controlling Seventh Circuit authority holding that the exercise of state-created lien rights does not constitute an exclusively governmental function.

Accordingly, the recent New Jersey and Nebraska decisions do not support the Counties' attempt to characterize Sabre as a state actor, and they provide no basis to depart from the governing standards articulated in *Scott* and *Hinman.*

## III. EVEN IF SABRE WERE A STATE ACTOR, THE COUNTIES' CLAIMS FAIL AS A MATTER OF LAW.

Counts II and III seek to transfer to Sabre any liability the Counties may incur on Plaintiffs' constitutional claims. Whether characterized as contribution under 42 U.S.C. § 1988 or contribution under the Illinois Joint Tortfeasor Contribution Act, the Counties' theory fails because neither federal nor Illinois law permits governmental defendants to shift § 1983 liability in that manner.

### A. Count II Fails Because § 1983 Does Not Permit Contribution Claims.

Count II seeks contribution under 42 U.S.C. § 1988 for any damages that may ultimately be awarded against the Counties in the underlying action. The Counties allege that Sabre should contribute their "pro rata share" of any damages assessed against the Counties and further allege that such pro rata share equals 100 percent of the Counties' liability. (Doc. 121, ¶¶ 72-75). The claim fails because neither § 1983 nor federal common law provides a right of contribution.

The Counties are being sued on federal constitutional claims brought pursuant to § 1983. Accordingly, the Counties' contribution claim necessarily seeks contribution for potential liability arising under § 1983. Federal courts have overwhelmingly held that no contribution remedy exists in § 1983 litigation.

In *Perks v. County of Shelby,* the Central District of Illinois dismissed a contribution claim arising from alleged constitutional violations, holding that "no such right exists." No. 09-3154,

2009 WL 2985859, at *3 (C.D. Ill. Sept. 15, 2009). Likewise, in *Burris v. Cullinan,* the court held that § 1983 "does not authorize a right to contribution." No. 09-3116, 2009 WL 3575420, at *8 (C.D. Ill. Oct. 23, 2009).

Those decisions are consistent with Supreme Court authority refusing to imply contribution rights where Congress did not create them. See *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 90-97 (1981); *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 638-47 (1981).

The Northern District of Illinois recently applied those same principles in *Sharritt. Sharritt v. Henry,* No. 23-cv-15838, Doc. 203, at 14-16 (N.D. Ill. Mar. 20, 2026) (holding that Illinois counties could not assert contribution claims against tax buyers because no right of contribution exists under § 1983) (attached as Exhibit A). There, Illinois counties asserted contribution claims against tax buyers arising from *Tyler v. Hennepin County* and Illinois tax sales. The court held, "The majority of courts have agreed with the Tax Buyers that no right to contribution exists under § 1983." *Sharritt,* Doc. 203 at 14. The court ultimately dismissed the counties' contribution theory because federal law simply does not provide such a remedy. *Id.* at 14-16.

The Counties assert the same theory here. Count II therefore fails as a matter of law.

**B. § 1988 Does Not Create a Right of Contribution.**

Recognizing the absence of any contribution remedy within § 1983 itself, the Counties attempt to invoke § 1988. That effort fares no better.

Section 1988 permits courts, in limited circumstances, to borrow state law if federal law is deficient and the borrowed rule is not inconsistent with federal law. See *Robertson v. Wegmann,* 436 U.S. 584, 588-90 (1978); *Bass by Lewis v. Wallenstein,* 769 F.2d 1173, 1188 (7th Cir. 1985).

But § 1988 is not an independent source of substantive rights. It does not authorize courts to create contribution remedies that Congress declined to enact.

As explained in *Sharritt,* courts considering § 1988 contribution theories must determine whether the proposed state-law contribution rule is consistent with the purposes of § 1983. *Sharritt,* Doc. 203 at 15. The policies underlying § 1983 include compensating persons injured by deprivation of federal rights and deterring abuses of governmental authority. *Robertson,* 436 U.S. at 590-91; *Wyatt v. Cole,* 504 U.S. 158, 161 (1992). Contribution undermines those purposes because it reduces the financial consequences imposed upon constitutional wrongdoers.

The Northern District expressly held, "A state law contribution claim would undermine the deterrent purpose of § 1983 because it would reduce the potential cost of a constitutional violation." *Sharritt,* Doc. 203 at 16. See also *Bulfin v. Rainwater*, No. 4:20 CV 689, 2021 WL 2915057, at *4 (E.D. Mo. July 12, 2021) (collecting cases); *Burris*, 2009 WL 3575420, at *9. ("Indeed, the deterrent effects of § 1983 would be reduced by allowing state actors to seek contribution, and would thus frustrate one of the purposes behind the provision.").

That reasoning applies with full force here. The Counties do not seek partial apportionment. They seek an order requiring private tax buyers to assume 100 percent of any constitutional liability assessed against the Counties. (Doc. 121, ¶¶ 72-75). Allowing governmental defendants to transfer all constitutional liability to private parties would eviscerate the deterrent function of § 1983. Section 1988 does not permit that result. Count II should therefore be dismissed with prejudice.

### C. Count III Fails Because the Illinois Joint Tortfeasor Contribution Act Cannot Be Used to Shift Constitutional Liability.

Count III invokes the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01 et seq. (Doc. 121, ¶¶ 76-80). This count merely repackages the same contribution theory rejected above.

The Illinois Contribution Act allows contribution among parties who are subject to common liability in tort. 740 ILCS 100/2(a). It does not create federal constitutional liability. Nor does it authorize governmental defendants to transfer § 1983 liability to private entities.

Again, the same argument was addressed in *Sharritt.* The counties there argued that Illinois contribution principles could be imported through § 1988 and applied against tax buyers. The court rejected the argument because Illinois contribution law conflicts with the deterrent purposes of § 1983. *Sharritt,* Doc. 203 at 14-16. The same reasoning controls here.

Moreover, Count III reveals that the Counties are not truly seeking contribution at all. The Complaint expressly alleges that Sabre should be responsible for "100% of any and all damages and costs" assessed against the Counties. (Doc. 121, ¶¶ 75, 80). But contribution does not permit complete reimbursement. The Illinois Supreme Court has explained, "The concept of contribution contemplates that each party whose fault contributed to an injury should pay its pro rata share of the common liability." *Virginia Surety Co. v. Northern Insurance Co. of N.Y.,* 224 Ill. 2d 550, 557 (2007).

A demand for 100 percent reimbursement is indemnity, not contribution. Contribution and indemnity are distinct remedies. "While contribution apportions the distribution of loss among joint tortfeasors based on relative degrees of fault, indemnity shifts the entire loss to the joint tortfeasor who was [allegedly] actually at fault." *Health Care Service Corp. v. Walgreen Co.,* 2023 IL App (1st) 230547, ¶ 23. An allegation that the third party "solely and proximately caused" the injury "would exonerate [the movant] completely from liability," and thus cannot support a contribution claim. *Van Jacobs v. Parikh,* 97 Ill. App. 3d 610, 422 N.E.2d 979.

Although the Counties did not plead indemnity, Count III should be analyzed as such because it is the substance of the claim, not the label affixed to it, that is dispositive of its proper characterization. *See Obriecht v. Raemisch,* 517, F.3d 489, 493 (7th Cir. 2008).

Regardless, even if the Counties had characterized the it as an indemnification claim (instead of contribution), the Northern District recently rejected Illinois counties' implied-indemnity claims against tax buyers because there was no qualifying pre-tort relationship and no basis for derivative liability. *Sharritt,* Doc. 203 at 16-19 (citing *Canadian Pac. Ry. Co. v. Wiliams-Hayward Protective Coatings, Inc.*, No. 02 C8800, 2004 WL 2108413, at *4 (N.D. Ill. Sept. 21, 2004). The court further observed that "[i]mportantly, implied indemnity actions lie only where one party is in some sense 'at fault,' and the other party is blameless though liable – typically because of strict liability, respondeat superior, implied warranty, or some other legal principle that imposed liability regardless of fault." *Sharritt,* Doc. 203 at 17-18 (citing *Mizuko Corp. Bank v. Corey & Assoc., Inc.,* 341 F.3d 644, 652 (7th Cir. 2003)).

As to the first element, "Illinois courts generally recognize only a narrow number of pre-tort relationships that give rise to a duty to indemnify, including 'lessor and lessee; employer and employee[;] owner and his lessee; [and] master and servant.' " *Sharritt,* Doc. 203 at 18 (quoting *Van Slambrouck v. Econ. Baler Co.,* 105 Ill. 2d 462, 470 (1985)). "Illinois courts have largely refused to expand implied indemnity beyond these qualifying relationships, including for business relationships." *Id.* (citing *Jordan v. Jewel Food Stores, Inc.,* 83 F. Supp. 3d 761, 772-73 (N.D. Ill. 2015) (collecting cases)). The Counties do not allege their pre-tort relationship with Sabre falls within any of these narrow categories.

As to the second element, any liability imposed on the Counties would not arise "regardless of fault." To the contrary, because the Counties' liability, if any, is predicated upon their own alleged

constitutional misconduct rather than vicarious, derivative, or no-fault liability, they cannot state a claim for implied indemnification as a matter of law. The Counties expressly allege: "Any liability that could be imposed on [the Counties] solely is based on actions [the Counties] are required to take under the Illinois Property Tax Code, on which they reasonably relied in collecting delinquent property taxes." (Doc. 121, ¶ 12; see also ¶ 56). Thus, by their own admission, any constitutional liability stems from the Counties' own actions in administering and enforcing the statutory tax collection process. Such allegations foreclose any claim for implied indemnification, which is available only where the party seeking indemnity is blameless or only derivatively liable.

The Counties cannot obtain through contribution what they could not obtain through indemnity. Count III should be dismissed with prejudice.

## IV. COUNT I SHOULD BE DISMISSED BECAUSE IT SEEKS AN ADVISORY OPINION AND DOES NOT PRESENT A LIVE CONTROVERSY BETWEEN THE COUNTIES AND SABRE.

Count I does not present a ripe controversy between the Counties and Sabre. The Counties seek a declaration either that the Indemnity Fund immunizes them from liability under *Tyler*[2] or, alternatively, that tax buyers are state actors who must reimburse any value in excess of the tax delinquency collected that is not recoverable from the Indemnity Fund. (Doc. 121, Count I, Wherefore para.) Those requests concern the Counties' potential defenses and hypothetical future liability, not any present dispute between the Counties and Sabre.

---

[2] In *Sharritt,* the court noted the third-party plaintiffs' third party complaint appears to include the tax buyers as parties to the declaratory judgment claim, and the allegations of that claim relate solely to the constitutionality of the Illinois Property Tax Code. The court held: "Given that the declaratory judgment claim does not appear to seek any specific declaration with respect to the Tax Buyers and the parties do not separately address the viability of any declaratory judgment claim against the Tax Buyers, the Court dismisses the Tax Buyers from the claim." *Sharritt*, Doc. 203, p. 13, fn. 9. Here, the same is true as to the Counties attempt to seek a declaration that the Indemnity Fund immunizes them from liability under *Tyler*. As such, it should Count I should be dismissed for that reason in addition to the reasons discussed herein.

The Declaratory Judgment Act authorizes relief only in a "case of actual controversy." 28 U.S.C. § 2201(a). Significantly, "declaratory relief is inappropriate to adjudicate past conduct, such as when damages have already accrued." *In re IKO Roofing Shingle Prods. Liab. Litig.,* No. 10-2255, 2013 WL 12111681, *3 (C.D. Ill. Apr. 11, 2013); see also *Moskowitz v. Alliant Insurance Services, Inc.,* 2023 WL 12189673, at *2 (N.D. Ill. Sep. 20, 2023); *Corliss v. O'Brien,* 200 F. App'x 80, 84 (3d Cir. 2006) (Declaratory relief is "not meant simply to proclaim that one party is liable to another."). This case concerns an alleged constitutional injury arising from past conduct, for which the allegedly injured parties – the former property owners – have already filed suit. The Counties seek a declaration that the Indemnity Fund immunizes them from liability or that Sabre (and other tax buyers) must reimburse the former property owners for any surplus value in those properties. Thus, the injury at the heart of the Counties' declaratory judgment claim is the alleged injury to the former property owners that has already occurred. Given the alleged damages have already occurred, declaratory judgment is not appropriate.

Furthermore, the Declaratory Judgment Act does not permit advisory opinions or declarations based on contingent future events. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 126-27 (2007); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937). It does not permit the Counties to "obtain a declaratory judgment that would merely determine a collateral legal issue governing certain aspects of pending or future suits." *Bodum USA, Inc. v. A Top New Casting Inc.,* No. 16 C 2916, 2016 WL 4440258, *2 (N.D. Ill. Aug. 23, 2016) (quoting *Calderon v. Ashmus,* 523 U.S. 740, 747 (1998)). Here, the Counties' requested declaration depends on several contingencies: Plaintiffs must prevail on their *Tyler* claims; the Court must reject the Indemnity Fund as a constitutionally sufficient remedy; and the Counties must be found liable. Only then would any question arise concerning Sabre or other tax buyers. That is not a present controversy—it is a

request for guidance about what might happen if multiple future events occur in the underlying case.

The allegations of the Third-Party Complaint underscore the point. They allege the Counties retain only delinquent taxes, fees, and penalties; that surplus value is not transferred to the Counties; that tax buyers petition circuit courts for tax deeds; that the Counties are not parties to those proceedings; and that county officials lack discretion to disregard court orders directing issuance of tax deeds. (Doc. 121, ¶¶ 35-42). Those allegations may relate to the Counties' defenses against Plaintiffs, but they do not create an independent claim against Sabre.

The Northern District recently rejected a similar effort in *Sharritt,* dismissing tax buyers from a declaratory judgment claim where the requested declaration concerned the constitutionality of the Property Tax Code rather than any specific legal obligation owed by the tax buyers. *Sharritt,* Doc. 203 at 13 n.9. The same defect exists here.

Nor can the Counties use declaratory relief to salvage their defective state-action and contribution theories. If Sabre is not a state actor and no contribution claim exists, the Counties cannot obtain the same relief simply by labeling it a request for declaratory judgment. Furthermore, asking this Court to find that Sabre must "reimburse any value in excess of the tax delinquency collected that is not recoverable from the Indemnity Fund" (Doc. 121, Count I, Wherefore para.) is essentially a money damages demand and thus wholly inappropriate as an item of declaratory relief. By asking this Court to order Sabre to pay money damages for an alleged constitutional violation, the Counties are merely re-pleading their contribution claims in a different guise.

Count I should therefore be dismissed because it seeks an advisory opinion concerning the Counties' potential defenses and hypothetical future liability rather than a concrete, present controversy between the Counties and Sabre.

## CONCLUSION

For the foregoing reasons, Third-Party Defendant Sabre Investments, LLC respectfully requests this Court dismiss Counts I, II, and III of the Third-Party Complaint against it with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and grant such further relief as the Court deems just and proper.

Respectfully Submitted,

SANDBERG PHOENIX & von GONTARD P.C.

By: */s/ Natalie J. Stanton*
Natalie J. Stanton, #6295170
701 Market Street, Suite 600
St. Louis, MO 63101
314-231-3332
314-241-7604 (Fax)
nstanton@sandbergphoenix.com
*Attorneys for Third-Party Defendant Sabre Investments, LLC*

## Certificate of Service

I hereby certify that on August 18, 2026 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Natalie J. Stanton*