**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| TOP METAL BUYERS INC., et al.,<br>Plaintiffs,<br><br>v.<br><br>ANDREW LOPINOT, et al.,<br>Defendants.<br><br>ANDREW LOPINOT, et al.,<br>Third-Party Plaintiffs,<br><br>v.<br><br>RAVEN SECURITIES, INC.,<br>SOUTHWESTERN ILLINOIS PROPERTIES, LLC,<br>VI, INC., BLUESTEM PROPERTIES, LLC,<br>JICTB INC., MS INVESTMENT GROUP, INC.,<br>and SABRE INVESTMENTS, LLC, on behalf of<br>themselves and all others similarly situated,<br>Third-Party Defendants. | ) | Case No. 3:24-cv-01073-NJR |

**MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANTS BLUESTEM PROPERTIES, LLC AND SOUTHWESTERN ILLINOIS PROPERTIES, LLC'S RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

Third-Party Defendants Bluestem Properties, LLC ("Bluestem") and Southwestern Illinois Properties, LLC ("SWIP") (together, "Movants") submit this memorandum in support of their motion to dismiss the Third-Party Complaint (Doc. 121) filed by Defendants/Third-Party Plaintiffs Andrew Lopinot, St. Clair County, Joe Aiello, Sangamon County, Kelly Vincent, Henry County, Angela G. Graves, McDonough County, Chris Slusser, and Madison County (collectively, the "Counties").

**INTRODUCTION**

The Third-Party Complaint asks this Court to do what no court has done: make private bidders at a county tax sale answer for a county's alleged failure to pay just compensation. Plaintiffs sue the Counties because, Plaintiffs say, the Counties adopted a policy of transferring tax-delinquent property by tax deed without returning the surplus value to the former owner. This Court has already held that the conduct at issue is "the Treasurers' discretionary policy decision not to provide just compensation after the property is transferred," and that the statutory Indemnity Fund "does not relieve Defendants of the Constitutional requirement to provide just compensation." (Doc. 97 at 17, 21.) Movants made no such policy and had no power to make one. According to the Counties' own pleading, the Counties conducted the sales, collected the delinquent taxes, and were paid in full; Illinois circuit courts adjudicated whether the statutory conditions for a tax deed were met and ordered the county clerks to issue the deeds; and the Counties had no discretion to disregard those orders. (Doc. 121, ¶¶ 3, 17-21, 35, 39-42.)

The Third-Party Complaint fails for independent reasons, each providing an alternative basis for dismissal. The Counties lack standing to litigate a takings injury that belongs to someone else and, as political subdivisions, are not "persons" who may invoke Section 1983. None of the three counts pleads the derivative liability that Rule 14(a) requires. The pleading identifies no conduct by Bluestem or SWIP at all. Movants are not state actors under any recognized theory. Neither Section 1983, Section 1988, nor the Illinois Joint Tortfeasor Contribution Act supplies the asserted right of contribution, and the Counties' demand for one hundred percent of their liability is indemnity by another name, which cannot be transformed into contribution by labeling it "pro rata." Count I seeks an advisory opinion. And, in the alternative, Movants' good-faith reliance on a presumptively valid statute and on final orders of the circuit courts provides a defense to damages that is apparent from the face of the pleading.

Materially identical third-party claims were dismissed six months ago in *Sharritt v. Henry*, No. 23 C 15838, 2026 WL 795868 (N.D. Ill. Mar. 20, 2026) (Doc. 184-1) ("*Sharritt*"), where seven Illinois counties facing the same *Tyler* claims tried the same maneuver against their tax buyers. The Counties filed this Third-Party Complaint less than six weeks after *Sharritt* was decided and pleaded the same claims anyway. Movants join and adopt, to the extent applicable to them, the motions to dismiss filed by Raven Securities, Inc. and VI, Inc. (Doc. 165), JICTB Inc. (Docs. 180, 181), and Sabre Investments, LLC (Doc. 184), and write separately to address the standing, Rule 14, Contribution Act, good-faith, and class issues in greater depth. The Third-Party Complaint should be dismissed with prejudice.

## BACKGROUND

### A. The Illinois Tax Sale Process and the Counties' Role in It.

Illinois collects delinquent real estate taxes through the Property Tax Code, 35 ILCS 200/1-1 *et seq.* (the "Code"). The county collector applies to the circuit court for judgment and an order of sale against each delinquent parcel, and then conducts the annual tax sale. 35 ILCS 200/21-150 to 21-190, 21-205. What is sold is the delinquent tax, not the land. Bidders who have registered with the collector, 35 ILCS 200/21-220, bid the penalty rate the owner must pay to redeem, and the lowest bidder wins. 35 ILCS 200/21-215. The purchaser pays the county the entire delinquency, with interest, penalties, and costs, and receives a certificate of purchase. 35 ILCS 200/21-240, 21-250. At that moment the county has been paid in full, and the county's lien is extinguished. (Doc. 121, ¶¶ 4, 34.) The purchaser, in exchange, holds a lien and the right to be repaid at the bid rate if the owner redeems, which the owner may do during a redemption period that, for most residential property, is two and one-half years. 35 ILCS 200/21-350.

If the property is not redeemed, the certificate holder may, but need not, petition the circuit court for a tax deed. 35 ILCS 200/22-30; (Doc. 121, ¶¶ 6-7, 21, 38). The court, not the purchaser and not the county, determines whether the statutory notices were given, 35 ILCS 200/22-5 to 22-25, whether the redemption period has expired, and whether the petitioner has complied with every requirement of the Code, and only then enters an order directing the county clerk to issue the deed. 35 ILCS 200/22-40; (Doc. 121, ¶¶ 21, 39, 41). The county officials have no discretion to disregard that order. (Doc. 121, ¶ 42.) Once issued, the deed is incontestable except by direct appeal or a petition under 735 ILCS 5/2-1203 or 5/2-1401. 35 ILCS 200/22-45. The Code also allocates the risk of loss to former owners: every purchaser pays a statutory fee at every sale into the county's Indemnity Fund, 35 ILCS 200/21-295, which the county treasurer holds and from which the circuit court may award compensation to a former owner, 35 ILCS 200/21-305.

Plaintiffs' theory of liability against the Counties is built on this structure. Plaintiffs allege that the taking occurs when the county "issues a tax deed transferring the entire property," that "the tax deed itself is legitimate" and "Plaintiffs do not challenge the judgment or deed or ultimate foreclosure," and that they "challenge only the failure to provide just compensation." (Doc. 143, ¶¶ 52, 76.) They allege that the Counties "make a policy choice to use tax sales," and "make a policy choice, when transferring the property, not to condition the transfer on return of the surplus value to the property owner." (*Id.* ¶¶ 74, 77.) This Court accepted that framing in denying the Counties' motions to dismiss. It held that Plaintiffs challenge "the Treasurers' discretionary policy decision not to provide just compensation after the property is transferred—and not any action mandated by State law," that Plaintiffs are "only challenging Defendants' refusal to furnish them just compensation for the surplus value of their property, not the issuance of the tax deed itself," and that "the existence of the Indemnity Fund does not relieve Defendants of the Constitutional

requirement to provide just compensation." (Doc. 97 at 13-14, 17, 21.) The Court also rejected the Counties' argument that Plaintiffs' claims should be dismissed for failure to join the tax buyers. (*Id.* at 34.)

**B. The Third-Party Complaint.**

On April 29, 2026, the Counties filed the Third-Party Complaint against seven named tax buyers, including Movants, and against a proposed defendant class of every tax buyer that obtained a tax deed in St. Clair, Sangamon, Henry, McDonough, or Madison County where the value of the property exceeded the delinquency. (Doc. 121, ¶¶ 23-24.) Beyond naming them (*id.* ¶ 19), the pleading alleges nothing specific to Bluestem or SWIP. It does not identify a single parcel, sale, certificate, petition, deed, or former owner associated with either Movant, or any communication or dealing between either Movant and any County official. Its factual allegations about tax buyers as a group are that they registered for and bid at annual tax sales the Counties conducted, paid the delinquencies, received certificates of purchase, exercised the statutory right to petition circuit courts for tax deeds, and obtained deeds issued on court order. (*Id.* ¶¶ 3-7, 19-21, 33-34, 38-42.) From those facts the Counties draw the legal conclusion that tax buyers "effectively acted under the color of state law" by "invoking and directing the traditional governmental power to foreclose on a tax lien," and add, in equally conclusory terms, that tax buyers were the "sole moving force" behind the deeds, that they had a "constitutional mandate" to deposit just compensation with the county or the court before taking a deed, and that by obtaining orders for deeds they "compelled" the Counties to violate the former owners' rights. (*Id.* ¶¶ 22, 60, 65-70.)

The Third-Party Complaint pleads three counts. Count I seeks a declaration that the Indemnity Fund immunizes the Counties from liability under *Tyler v. Hennepin County*, 598 U.S. 631 (2023), or, alternatively, that tax buyers are state actors who must reimburse any value in

excess of the delinquency that is not recoverable from the Indemnity Fund. (*Id.* ¶¶ 46, 57, 62-63 and Count I prayer.) Count II seeks contribution under 42 U.S.C. § 1988 of the tax buyers' "pro rata share" of any damages assessed against the Counties, which the Counties allege is one hundred percent. (*Id.* ¶¶ 72-75.) Count III seeks the same one hundred percent under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01 *et seq.* (*Id.* ¶¶ 76-80.) The Counties allege that any liability imposed on them "solely is based on actions [they] are required to take under the Illinois Property Tax Code, on which they reasonably relied in collecting delinquent property taxes," that they performed only "ministerial acts compelled by Illinois law and/or by court order," and that they "did not cause any parties to lose their property without just compensation." (*Id.* ¶¶ 12, 56, 71, 74.)

## LEGAL STANDARD

A Rule 12(b)(1) motion tests subject-matter jurisdiction, including standing, and the party invoking jurisdiction bears the burden of establishing it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). Under Rule 12(b)(6), the Court accepts well-pleaded facts as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and legal conclusions are not presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

### I. THE COUNTIES LACK ARTICLE III STANDING TO ASSERT A TAKINGS INJURY THEY DID NOT SUFFER, AND AS POLITICAL SUBDIVISIONS THEY ARE NOT "PERSONS" WHO MAY SUE UNDER SECTION 1983.

Every count rests on the premise that the Counties may enforce the Takings Clause against Movants. They may not, for two reasons.

First, Article III requires the Counties to show an injury in fact that is their own, fairly traceable to Movants, and redressable by the relief sought. *Lujan*, 504 U.S. at 560-61. The only constitutional injury alleged anywhere in this case is the deprivation of Plaintiffs' surplus equity. The Counties owned none of the properties. They allege that they retained only the delinquent taxes, fees, and penalties and that no surplus value was transferred to them. (Doc. 121, ¶¶ 17, 35-36, 58.) Movants took nothing from the Counties; they paid the Counties every dollar the Counties were owed. The Counties' only "injury" is the prospect of a judgment for their own alleged policy, and a litigant cannot manufacture standing against a stranger from the consequences of its own conduct. Judge Ellis identified precisely this problem in *Sharritt*: the counties there "do not own any properties at issue, nor have the Tax Buyers deprived them of any private property." *Sharritt*, 2026 WL 795868, at *6 n.8.

Second, the Counties are not "persons" entitled to invoke Section 1983. The Seventh Circuit has held that "[m]unicipalities cannot challenge state action on federal constitutional grounds because they are not 'persons' within the meaning of the Due Process Clause," and that a municipality therefore "cannot invoke the protection of the Fifth or Fourteenth Amendments, and therefore cannot bring a section 1983 claim." *City of E. St. Louis v. Cir. Ct. for the Twentieth Judicial Cir.*, 986 F.2d 1142, 1144 (7th Cir. 1993) (citation omitted); *see also Barbara Z. v. Obradovich*, 937 F. Supp. 710, 722 (N.D. Ill. 1996) (political subdivisions cannot sue under Section 1983, which exists for "the vindication of individual interests against state action"). Section 1983 protects citizens from the government; it does not arm the government with a cause of action against citizens who did business with it. Because Count I asks for a declaration under the Fifth Amendment and Section 1983, Count II is expressly brought under Section 1988 to enforce Section 1983 liability, and Count III seeks to apportion that same liability, the Counties' inability to

sue under Section 1983 disposes of all three counts. *See Sharritt*, 2026 WL 795868, at *6 n.8 (questioning "whether the Third-Party Plaintiffs, who represent various municipalities, qualify as 'other persons' entitled to maintain a suit under § 1983"). The result is the same whether the defect is treated as jurisdictional or as a failure to state a claim. *See Kerr v. Polis*, 20 F.4th 686, 692-96 (10th Cir. 2021) (en banc). This is analytically distinct from Article III standing: even assuming the Counties could identify a cognizable injury, they still could not use Section 1983 to assert the constitutional rights of their constituents or former property owners.

## II. THE THIRD-PARTY COMPLAINT DOES NOT PLEAD THE DERIVATIVE LIABILITY THAT RULE 14(a) REQUIRES.

Rule 14(a) permits a defendant to implead only "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). That is "a plain condition on the face of Rule 14," and it is not satisfied merely because the third-party claim arises from the same transaction; the third party must be secondarily liable to the defendant. *U.S. Gen., Inc. v. City of Joliet*, 598 F.2d 1050, 1051-53 (7th Cir. 1979). Count I fails that condition in both of its branches. Its first requested declaration, that the Indemnity Fund immunizes the Counties from Tyler liability, is not a claim against Movants at all. It is a defense to Plaintiffs' claims, one this Court has already rejected (Doc. 97 at 21), and one that Plaintiffs, not Movants, are the proper adversaries on. (See Doc. 167.) Its second requested declaration, that tax buyers are "required to reimburse" the value in excess of the delinquency (Doc. 121, ¶¶ 57, 62 and Count I prayer), seeks to declare Movants answerable to Plaintiffs, a liability Movants deny and one that in any event would not run to the Counties. Impleader cannot be used to tender a substitute defendant to the plaintiff. Rule 14 once permitted impleader of a person liable "to the plaintiff"; the 1946 amendment deleted those words because "a defendant cannot compel the plaintiff, who has sued him, to sue also a third party whom he does not wish to sue." Fed. R. Civ. P. 14 advisory committee's note to 1946 amendment;

Hartford Accident & Indem. Co. v. Sullivan, 846 F.2d 377, 381 (7th Cir. 1988) (liability must be "derivative"); see Sharritt, 2026 WL 795868, at *6 n.9 (dismissing tax buyers from declaratory count that sought no specific declaration as to them). Counts II and III are framed as derivative claims, but as shown below there is no law under which Movants "may be liable" to the Counties for any part of Plaintiffs' claims. SWIP that allegedly gives rise to derivative liability. It names Movants, but does not identify a parcel, tax sale, certificate of purchase, petition for tax deed, deed, former owner, communication, agreement, or other transaction involving either Movant and any County official. Group allegations concerning what "tax buyers" generally did cannot substitute for allegations connecting either Movant to the liability the Counties seek to shift.

## III. THE THIRD-PARTY COMPLAINT ALLEGES NO CONDUCT BY BLUESTEM OR SWIP.

Even apart from Rule 14, the Third-Party Complaint states no claim against Bluestem or SWIP because it alleges nothing that either of them did. As shown above, it names them only as members of a group of "tax buyers," and it does not allege that either Movant obtained a deed to property owned by any named Plaintiff. (Doc. 121, ¶¶ 18-21.) "Liability is personal," and a complaint that rests on the collective responsibility of an undifferentiated group must be dismissed. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

## IV. MOVANTS ARE NOT STATE ACTORS.

Because the Fourteenth Amendment reaches only state action, a private party may be liable under Section 1983 only if its conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "Without state action there can be no § 1983 liability." *Scott v. Univ. of Chi. Med. Ctr.*, 107 F.4th 752, 762 (7th Cir. 2024). The Supreme Court has recognized that

a private entity may be treated as a state actor only in a few circumstances: when it performs a function that the government has "traditionally and exclusively performed," when the government compels the challenged conduct, or when the private entity acts jointly with or is so entwined with the government that the two are interdependent to the point of overlapping identity. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296, 303 (2001); *Scott*, 107 F.4th at 757. Action taken by a private party "with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). The only allegation on this element is the Counties' conclusion that tax buyers "effectively acted under the color of state law" and "effectively and practically are State actors." (Doc. 121, ¶¶ 22, 65.) That is a legal conclusion the Court need not accept, *Iqbal*, 556 U.S. at 678, and the facts the Counties do plead refute it under every recognized theory.

### A. Purchasing and Enforcing a Statutory Lien Is Not a Traditional and Exclusive Public Function.

The public-function test is satisfied only where "the government must have traditionally and exclusively performed the function." *Halleck*, 587 U.S. at 809. "[V]ery few" functions qualify, such as running elections or operating a company town; it is not enough that the function serves the public or that the government sometimes performs it. *Id.* at 809-10 (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)). The Supreme Court held in *Flagg Bros.*, 436 U.S. at 157-64, that a private party's sale of property to satisfy a lien created by state statute is not state action, because the resolution of private disputes over property has never been an exclusive prerogative of the sovereign. The Seventh Circuit applied that holding to Illinois's statutory lien scheme in *Hinman v. Lincoln Towing Serv., Inc.*, 771 F.2d 189, 193 (7th Cir. 1985): "The availability of and right to exercise state-created liens has never been an exclusive [prerogative] of the State." Courts

addressing tax-sale purchasers have reached the same conclusion. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902-03 (6th Cir. 2003) (tax-sale purchaser that took a tax deed and sued to quiet title was not a state actor); *Tunstall v. Office of Judicial Support*, 820 F.2d 631, 633-34 (3d Cir. 1987) (tax-sale purchaser's "purchase of the property was not accomplished under color of state law").

The Counties' own allegations place Movants on the private side of that line. The Counties allege that the Counties obtained the judgments and held the sales; that the Counties collected the delinquent taxes; that the county lien was extinguished when the certificate issued; that the circuit courts determined whether the statutory requirements were met and entered the orders; and that the county clerks issued the deeds. (Doc. 121, ¶¶ 3-4, 17-21, 33-35, 39-42.) Every sovereign act in that sequence, from the levy of the tax to the entry of the order to the execution of the deed, was performed by the government or by the court. What Movants did was buy a lien at a public auction and, when the owner did not redeem, ask a court to enforce it, exactly as the holder of a mortgage or a mechanic's lien would. The Counties further allege that "no provision of the Illinois Property Tax Code compels" a certificate holder to seek a deed at all, and that "[t]ax buyers are responsible entirely for their own conduct in obtaining tax deeds." (*Id.* ¶¶ 6-7.) A purely optional private remedy is the antithesis of a governmental function. The Counties' characterization of tax buyers as "invoking and directing" the "governmental power to foreclose" (*id.* ¶ 22) describes nothing more than the filing of a petition in state court, which does not by itself make the petitioner a state actor. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge"); *see Lugar*, 457 U.S. at 939 n.21 (reserving whether "a private party's mere invocation of state legal procedures" is joint participation).

The Counties' remaining allegations do not change the analysis. That a tax buyer was the "sole moving force" behind its own petition (Doc. 121, ¶ 66) describes every litigant who files a lawsuit; it is the very conduct *Dennis* and *Lugar* hold insufficient. The asserted "constitutional mandate" requiring a private certificate holder to deposit just compensation before taking a deed (*id.* ¶¶ 67-68) has no source in the Constitution, which obligates the government that takes property, or in the Code, which the Counties say they follow to the letter and which contains no such requirement. And the allegation that tax buyers "compelled" the Counties to violate anyone's rights (*id.* ¶ 70) is refuted by the Counties' own pleading that the orders were entered by the circuit courts, which had no discretion to deny them, and that the Counties' obligation ran to the courts' orders. (*Id.* ¶¶ 39, 41-42.)

**B. There Was No Joint Action, and No Compulsion.**

A private party becomes a state actor through joint action only where "there must have been a real agreement—explicit or implicit—between the parties" to deprive the plaintiff of a constitutional right; "[m]erely working in parallel toward 'a common goal' is not the same as conspiring together." *Scott*, 107 F.4th at 758. The pleading must allege that the private party and the government "had a meeting of the minds and thus reached an understanding" to violate the plaintiff's rights. *Id.* (quoting *Wilson v. Warren Cnty.*, 830 F.3d 464, 468 (7th Cir. 2016)). The Third-Party Complaint alleges no agreement, no communication, no coordination, and no shared purpose between any County official and either Movant. Indeed, the Counties plead the opposite: that they were not parties to the tax deed proceedings and that they had no discretion in the matter. (Doc. 121, ¶¶ 40, 42.) A party that had no role and no choice cannot have reached a meeting of the minds with anyone. And Plaintiffs' own theory, which the Counties do not contest for present purposes, is that the Counties made the challenged policy choice unilaterally, by declining to

condition their transfers on return of the surplus. (Doc. 143, ¶ 77; Doc. 97 at 17.) Nor is there state compulsion of Movants' conduct; the Counties allege that the decision to seek a deed is the purchaser's alone. (Doc. 121, ¶¶ 6-7.) Private use of state-sanctioned remedies does not, without more, rise to the level of state action. *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988); *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992).

### C. There Is No Entwinement.

Entwinement exists only where the public and private entities are "actually entwined, not whether they appear to be," and are interdependent "to the point of largely overlapping identity." *Scott*, 107 F.4th at 761 (quoting *Brentwood*, 531 U.S. at 303). The Counties allege nothing of the kind: no county ownership, funding, control, or management of either Movant, and no participation by either Movant in the Counties' affairs. *Cf. Brentwood*, 531 U.S. at 298-302. The relationship the Counties plead is that of seller and buyer at a public auction, after which the Counties' lien is extinguished and the parties go their separate ways. (Doc. 121, ¶¶ 4, 20-21, 33-34.) That is an arm's-length transaction, not an overlapping identity.

### D. Out-of-State Decisions Do Not Displace Seventh Circuit Law.

Decisions from New Jersey and Nebraska addressing tax-lien purchasers under those States' statutes, *257-261 20th Ave. Realty, LLC v. Roberto*, 259 N.J. 417 (2025); *Cont'l Res. v. Fair*, 317 Neb. 391 (2024), construed materially different schemes and cannot override *Halleck*, *Flagg Bros.*, *Hinman*, and *Scott*, which bind this Court and hold that the exercise of a state-created lien remedy is private conduct.

## V. NO RIGHT OF CONTRIBUTION EXISTS UNDER SECTION 1983, SECTION 1988, OR THE ILLINOIS CONTRIBUTION ACT, AND THE COUNTIES' DEMAND FOR ONE HUNDRED PERCENT IS INDEMNITY THAT ILLINOIS LAW DOES NOT PERMIT.

Counts II and III seek to transfer to Movants the Counties' liability, if any, on Plaintiffs' Section 1983 claims. Both fail as a matter of law even if Movants were state actors.

### A. Section 1983 Provides No Right of Contribution.

A right to contribution under a federal statute exists only where Congress created it, expressly or by clear implication, or where the claim falls within one of the few areas in which federal courts still fashion common law. *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638-42 (1981); *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 90-95 (1981). Section 1983 contains no such right: "There is no federal right to indemnification provided in 42 U.S.C. § 1983." *Allen v. City of Los Angeles*, 92 F.3d 842, 845 n.1 (9th Cir. 1996), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997) (en banc). Courts have therefore held with near unanimity that no right of contribution exists under Section 1983. *Crews v. Cnty. of Nassau*, 612 F. Supp. 2d 199, 207-13 (E.D.N.Y. 2009) (collecting cases); *Perks v. Cnty. of Shelby*, No. 09-3154, 2009 WL 2985859, at *1-3 (C.D. Ill. Sept. 15, 2009); *Burris v. Cullinan*, No. 09-3116, 2009 WL 3575420, at *8-9 (C.D. Ill. Oct. 23, 2009); *Piercy v. Whiteside Cnty.*, No. 14 CV 7398, 2016 WL 1719802, at *5 (N.D. Ill. Apr. 29, 2016); *see Sharritt*, 2026 WL 795868, at *7 ("[T]he majority of courts have agreed with the Tax Buyers that no right to contribution exists under § 1983.").

### B. Section 1988 Cannot Import a State-Law Contribution Remedy That Is Inconsistent with Section 1983.

Section 1988(a) allows a federal court to borrow state law only where federal law is "deficient in the provisions necessary to furnish suitable remedies" and only "so far as the same is

not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a); *Robertson v. Wegmann*, 436 U.S. 584, 588-90 (1978); *Bass ex rel. Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985). Section 1988 is not an independent source of substantive rights, and the consistency inquiry looks to the policies underlying Section 1983, which are "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson*, 436 U.S. at 590-91; *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). A contribution remedy is inconsistent with the second of those policies because it reduces the cost to the government of violating the Constitution. That is why the majority of courts to consider the question, including *Sharritt*, have refused to borrow state contribution law through Section 1988. *Sharritt*, 2026 WL 795868, at *7 ("[A] state law contribution claim would undermine the deterrent purpose of § 1983 because it would reduce the potential cost of a constitutional violation."); *Bulfin v. Rainwater*, No. 4:20 CV 689, 2021 WL 2915057, at *4 (E.D. Mo. July 12, 2021) (collecting cases); *Burris*, 2009 WL 3575420, at *9. The inconsistency is at its most acute here, where the Counties seek to transfer one hundred percent of their constitutional liability to private parties. (Doc. 121, ¶¶ 75, 80.)

### C. The Contribution Act Does Not Apply on Its Own Terms Because Movants Are Not "Subject to Liability in Tort" to Plaintiffs.

Count III fails for the additional reason that the Illinois Joint Tortfeasor Contribution Act does not reach these parties. The Act creates a right of contribution only "where 2 or more persons are subject to liability in tort arising out of the same injury." 740 ILCS 100/2(a). The right is derivative: a third-party defendant that is not itself liable in tort to the injured plaintiff cannot be liable in contribution, and the question is determined as of the time of the injury. *Vroegh v. J & M Forklift*, 165 Ill. 2d 523, 529-30 (1995). Movants are not subject to liability in tort to Plaintiffs on any theory the pleadings disclose. Count III rests on the "tort claims" in Plaintiffs' complaint (Doc.

121, ¶ 77), but the only such claims that survived the Counties' motions to dismiss are inverse condemnation, which is a constitutional remedy against the government, and unjust enrichment and money had and received, which this Court limited to properties the Counties themselves retained or sold (Doc. 97 at 31-32), which by definition involve no tax buyer, and which the Counties expressly exclude from the Third-Party Complaint (Doc. 121 at 3 n.1 ("trustee tax deeds are not the subject of this Third-Party Complaint")). The only wrong alleged against anyone is a taking without just compensation, and the Takings Clause runs against the government alone; absent state action, which is not pleaded, a private purchaser cannot commit a constitutional taking. *Lugar*, 457 U.S. at 924, 937. Plaintiffs themselves disclaim any challenge to the tax deeds, allege that "the tax deed itself is legitimate," and seek nothing from the tax buyers. (Doc. 143, ¶ 76; Doc. 97 at 14.) The deeds were issued on final orders of the circuit courts and are incontestable except by direct appeal or a petition under 735 ILCS 5/2-1203 or 5/2-1401, 35 ILCS 200/22-45, so no tort claim can be founded on a purchaser's receipt of them. And the General Assembly has already decided what a tax buyer must contribute toward the losses of former owners: the statutory fee that every purchaser pays into the Indemnity Fund at every sale. 35 ILCS 200/21-295. Because there is no "common liability" to apportion, the Act supplies no claim. *See Va. Sur. Co. v. N. Ins. Co. of N.Y.*, 224 Ill. 2d 550, 557 (2007).

### D. The Demand for One Hundred Percent of the Counties' Liability Is Indemnity, Not Contribution, and Illinois Does Not Recognize Implied Indemnity on These Facts.

Counts II and III each allege that the tax buyers' "pro rata share" is "100% of any and all damages and costs" assessed against the Counties. (Doc. 121, ¶¶ 75, 80.) That is not contribution. "The concept of contribution contemplates that each party whose fault contributed to an injury should pay its pro rata share of the common liability," *Va. Sur.*, 224 Ill. 2d at 557, whereas implied

indemnity shifts the entire loss from a party that is blameless though liable to the party at fault. *Am. Nat'l Bank & Tr. Co. v. Columbus-Cuneo-Cabrini Med. Ctr.*, 154 Ill. 2d 347, 351 (1992). The substance of the claim, not its label, controls. Treated as what it is, the claim fails. Illinois abolished implied indemnity based on relative fault when it adopted contribution, and recognizes implied indemnity today only where the party seeking it stands in a recognized pre-tort relationship with the indemnitor and is liable solely by operation of law, without fault of its own, for the indemnitor's conduct. *Am. Nat'l Bank*, 154 Ill. 2d at 350-54; *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 255 (1988); *Van Slambrouck v. Econ. Baler Co.*, 105 Ill. 2d 462, 470 (1985) (qualifying relationships include lessor and lessee, employer and employee, and master and servant). The Counties plead neither element. Seller and buyer at a public auction is not a qualifying relationship, and *Sharritt* rejected the argument that the Code itself creates one. *Sharritt*, 2026 WL 795868, at *8. And the Counties' liability, if any, is for their own policy choices, not for anything Movants did: the Counties allege that any liability imposed on them "solely is based on actions [they] are required to take under the Illinois Property Tax Code" (Doc. 121, ¶¶ 12, 56), and this Court has held that Plaintiffs challenge the Treasurers' own discretionary policy (Doc. 97 at 17, 27-28). A party liable for its own conduct is not entitled to implied indemnity. The Counties' contrary allegations that they performed only "ministerial acts compelled by Illinois law and/or by court order" and "did not cause any parties to lose their property" (Doc. 121, ¶¶ 71, 74) do not help them; if those allegations are true, the Counties have a complete defense to Plaintiffs' claims and nothing to shift, and if this Court's ruling in Doc. 97 is right, the Counties' liability is for their own discretionary policy. Either way, there is no derivative liability to indemnify.

## VI. COUNT I SEEKS AN ADVISORY OPINION AND RESTATES THE FAILED CONTRIBUTION THEORY IN DECLARATORY FORM.

The Declaratory Judgment Act confers jurisdiction only in "a case of actual controversy," 28 U.S.C. § 2201(a), meaning a dispute that is "definite and concrete" and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). A party may not use the Act to obtain a ruling on "a collateral legal issue governing certain aspects of [the parties'] pending or future suits." *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998). Count I fails on both counts. Its first branch asks the Court to declare that the Indemnity Fund immunizes the Counties from *Tyler* liability. That is a defense to Plaintiffs' claims (Doc. 121, ¶¶ 46, 49, 55, 61), it presents no controversy between the Counties and Movants, and this Court has already decided it against the Counties. (Doc. 97 at 21.) Its second branch is contingent on a chain of future events: Plaintiffs must prevail; the Court must reject the Counties' defenses; the Counties must be found liable; and a judgment must be entered that the Counties then seek to pass along. That is a request for an advisory opinion. And the relief requested, a declaration that Movants are "required to reimburse" value in excess of the delinquency (Doc. 121, ¶ 62 and Count I prayer), is a demand for money dressed as a declaration. If Movants are not state actors and no right of contribution or indemnity exists, the Counties cannot obtain the same relief by relabeling it. *See Sharritt*, 2026 WL 795868, at *6 n.9.

## VII. IN ANY EVENT, MOVANTS' GOOD-FAITH RELIANCE ON THE CODE AND ON THE ORDERS OF THE CIRCUIT COURTS BARS ANY DAMAGES LIABILITY, AND THAT DEFENSE IS APPARENT FROM THE PLEADING.

Even if the Counties could establish state action and a cause of action, the Seventh Circuit has held that a private party sued under Section 1983 for damages is entitled to a good-faith defense

when it acted in reliance on a state statute and the law as it then stood. *Janus v. AFSCME, Council 31*, 942 F.3d 352, 361-67 (7th Cir. 2019); *see Wyatt*, 504 U.S. at 169 (leaving the defense open); *id.* at 174 (Kennedy, J., concurring) ("a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law"); *Lugar*, 457 U.S. at 942 n.23. Every fact needed for that defense appears on the face of the Third-Party Complaint. The Counties allege that the tax buyers proceeded under the Code, that circuit courts adjudicated their compliance and ordered the deeds, and that the Counties themselves "reasonably relied" on the same statute. (Doc. 121, ¶¶ 12, 21, 32, 39-42, 56.) No court has ever held that an Illinois tax buyer is liable for a county's failure to pay just compensation, and Plaintiffs themselves allege that the State "has not changed its statutes in the wake of *Tyler*." (Doc. 143, ¶ 155.) An affirmative defense supports dismissal under Rule 12(b)(6) when the pleading itself establishes it, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002), and the Seventh Circuit has affirmed a Rule 12 dismissal on this very defense. *Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368, 369-71 (7th Cir. 2019). If the Counties reasonably relied on the Code, as they plead, so did Movants.

## VIII. THE DEFENDANT-CLASS ALLEGATIONS SHOULD BE STRICKEN.

If any part of the Third-Party Complaint survives, the Court should strike its defendant-class allegations, which the Counties themselves plead only conditionally, "[i]f and in the event" Plaintiffs obtain certification of their own class. (Doc. 121, ¶ 23.) Rule 23 directs the Court to determine class status "[a]t an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), and authorizes an order requiring that the pleadings be amended to eliminate class allegations, Fed. R. Civ. P. 23(d)(1)(D). A court may deny certification "even before the plaintiff files a motion requesting certification," and need not delay if additional discovery "would not be useful." *Kasalo v. Harris &*

*Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). The pleadings show that here. Any liability of a tax buyer would turn on facts unique to each buyer and each parcel: which properties it bought, whether the owner redeemed, what the circuit court found, whether it kept or sold the property and for how much, and, absent a ruling on good faith at the pleading stage, the circumstances of each buyer's reliance on the Code and the courts' orders. Those individualized questions defeat commonality and predominance, Fed. R. Civ. P. 23(a)(2), (b)(3), and they expose as conclusory the typicality allegation that class members "are not subject to unique defenses." (Fed. R. Civ. P. 23(a)(3); Doc. 121, ¶ 27.) Nor does Rule 23(b)(2), which the Counties also invoke (Doc. 121, ¶¶ 24, 29), reach a demand for one hundred percent of a money judgment. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011). And the Counties' conclusory allegation that the named tax buyers are adequate representatives with no interests adverse to the class (Doc. 121, ¶ 28) cannot be squared with Rule 23(a)(4). Movants have not agreed to represent anyone, dispute every element of the claims, and, as bidders competing against every other class member at every sale, have interests that are structurally adverse to the class they are asked to represent.

## CONCLUSION

For the foregoing reasons, Third-Party Defendants Bluestem Properties, LLC and Southwestern Illinois Properties, LLC respectfully request that the Court dismiss the Third-Party Complaint (Doc. 121) as to them, with prejudice, under Rules 12(b)(1) and 12(b)(6); in the alternative, strike the defendant-class allegations; and grant such other and further relief as the Court deems just and proper. Dismissal should be with prejudice because the defects are legal, not factual, and the Counties, who pleaded with the benefit of *Sharritt*, cannot cure them by amendment.

**RIEZMAN BERGER, P.C.**

By: Bentley J. Bender

Bentley J. Bender, ARDC #6282500
7700 Bonhomme Avenue, Seventh Floor
St. Louis, Missouri 63105
Telephone: 314.727.0101
Facsimile: 314.727.6458
Bender@riezmanberger.com

Attorneys for Third-Party Defendants
Bluestem Properties, LLC and
Southwestern Illinois Properties, LLC

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on September 11, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Bentley J. Bender
/s/ Bentley J. Bender